```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| ALAN J. MEYERS, ROCCO H. COLANERO, ALLEN PENLEY, and EDDIE WARREN BRIDGES, on behalf of themselves and a similarly situated class, and the INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA-UAW<br><br>    Plaintiffs,<br><br>v.<br><br>DTNA TRUCKS NORTH AMERICA, LLC and DTNA TRUCKS NORTH AMERICA WELFARE BENEFIT PLAN<br><br>    Defendants. | No. 14-2361 |

## FINAL APPROVAL ORDER

Before the Court is the December 17, 2014 Motion for Final Approval of Class Action Settlement Agreement (the "Motion"), brought jointly by Plaintiffs Alan J. Meyers, Rocco H. Colanero, Allen Penley, Eddie Warren Bridges (collectively the "Class Representatives"); Plaintiff International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW (the "UAW") (collectively "Plaintiffs"); Defendant DTNA Trucks North America, LLC ("DTNA"); and Defendant DTNA

Trucks North America Welfare Benefit Plan (collectively "Defendants"). (Motion, ECF No. 50; Motion Suppl., ECF No. 51.)

For the following reasons, the Motion is GRANTED.

## I. Standard of Review

Class settlement approval is committed to the district court's discretion. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 625 (6th Cir. 2007). To approve a class settlement, the district court must conclude that it is "fair, reasonable, and adequate." Id. at 631; Fed. R. Civ. P. 23(e)(1). A number of factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. UAW v. Gen. Motors, 497 F.3d at 631. The court must also determine whether the settlement gives preferential treatment to the named plaintiffs. Vassalle v. Midland Funding LLC, 708 F.3d 747, 755 (6th Cir. 2013) (internal quotation marks and citation omitted).

## II. Analysis

### A. The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary. See, e.g., Leonhardt v. ArvinMeritor, Inc., 581 F.Supp.2d 818, 838 (E.D. Mich. 2008); In re Telectronics Pacing Sys., 137 F.Supp. 2d 985, 1016 (S.D. Ohio 2001).

The Court has no evidence of fraud or collusion. To the contrary, the record demonstrates that the Settlement developed from vigorous, arms-length negotiations. The UAW and DTNA have disagreed for years about whether retiree healthcare benefits are vested. (Approval Memo at 10, ECF No. 50-1.) They reached a memorandum of understanding only after months of negotiations. (Id.) The UAW, DTNA, and Class Counsel agreed to the terms of the Settlement only after months of additional negotiations. (Id.) Because the parties had a genuine dispute that was resolved only after arms-length negotiations, this factor weighs in favor of approving the Settlement.

### B. The Complexity, Expense, and Likely Duration of the Litigation

In evaluating a proposed class settlement, the court must weigh the risks, expense and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal. UAW v. Gen. Motors, 497 F.3d at 631; Thacker v. Chesapeake Appalachia, L.L.C., 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010).

3

Several factors weigh in favor of approving the Settlement: the complexities of the evolving law governing Labor Management Relation Act ("LMRA") and ERISA class action litigation; the potential duration of this costly litigation; and the likelihood of appeals. The risks and delays that Plaintiffs face are especially significant because Plaintiffs seek retiree healthcare benefits, which are vitally important. Given the risk in continuing litigation, the cost of that litigation, and the Settlement's expedient provision of healthcare benefits, this factor weighs in favor of approving the Settlement.

**C. The Amount of Discovery Engaged in by the Parties**

In evaluating a proposed class settlement, the court must consider the amount of discovery the parties have conducted. UAW v. Gen. Motors, 497 F.3d at 641. The parties' discovery must enable them to frankly evaluate the merits of the case and determine an appropriate settlement value. Although formal discovery is not necessary for settlement approval, its absence may suggest that class counsel might not have obtained the best agreement possible for the plaintiff class. Olden v. Gardner, 294 F. App'x 210, 218 (6th Cir. 2008).

Although the parties have not engaged in formal discovery, discovery has been adequate. DTNA, the UAW, and Class Counsel have exchanged and analyzed relevant collective bargaining agreements ("CBAs"), ERISA plan documents, financial and

4

actuarial documents, and expert analyses. (Nickelhoff Decl. ¶¶ 6-7, ECF No. 39-2.) Through that informal discovery, the parties acquired sufficient information to negotiate settlement effectively.

Although informal, the parties' discovery has enabled them to frankly evaluate the merits of the case and determine an appropriate settlement value. This factor weighs in favor of approving the Settlement.

### D. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011). "The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." Id.

"Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions, [the court] cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." UAW v. Gen. Motors, 497 F.3d at 631 (internal quotation marks and citation omitted).

"[The court's] task is not to decide whether one side is right or even whether one side has the better of these

5

arguments." Id. at 632. "Otherwise, [the court] would be compelled to defeat the purpose of a settlement in order to approve a settlement." Id. "The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." Id.

Weighing in favor of approving the Settlement is the risk of continuing litigation. Absent settlement, Plaintiffs face significant risk in seeking class certification and addressing the substantive, contentious issue of whether the Class Members' retiree healthcare benefits are vested. Plaintiffs would face further uncertainty given the evolving law in LMRA and ERISA cases. See, e.g., M&G Polymers USA, LLC v. Tackett, 733 F.3d 589 (6th Cir. 2013) (certiorari granted to address whether courts should presume that a CBA's silence on the duration of retiree healthcare benefits means that the parties intended those benefits to vest).

Also weighing in favor of approval are the Settlement's amount and form. Under the Settlement, a DTNA-funded VEBA will provide healthcare benefits to Class Members. DTNA is providing hundreds of millions of dollars to fund benefits that the Class Members want and need. The VEBA's funding is projected to be sufficient to provide the retirees, and their spouses and dependents, with long-term healthcare benefits and pay for 96% of the projected cost of those benefits. (Taranto Decl. ¶ 8,

6

ECF No. 40-4.) Given DTNA's substantial funding of the VEBA, and because the Settlement provides that a DTNA-independent Committee will administer the VEBA, Class Members will enjoy healthcare benefits secured from DTNA's discretion and financial performance.

The parties have negotiated the settlement of a legitimate legal and factual dispute. Given the risk of continuing litigation and the substantial relief, this factor weighs heavily in favor of approving the Settlement.

**E. The Opinions of Class Counsel and Class Representatives**

In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference. See, e.g., Thacker, 695 F. Supp. 2d at 532-33; UAW v. Ford Motor Co., 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."); Stewart v. Rubin, 948 F. Supp. 1077, 1087 (D.D.C.1996) (the trial court "should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof").

Class Counsel's experience supports its entitlement to deference. Class Counsel is the Sachs Waldman law firm. It has thirteen employees who practice and specialize in various

7

aspects of labor, employment, and ERISA law. (Nickelhoff Decl. ¶ 5.) Its clients include labor unions and collectively-bargained fringe benefit funds. (Id. ¶ 5.) Lead Counsel Andrew Nickelhoff specializes in ERISA welfare and pension and labor law. (Id. ¶ 3.) He has been appointed class counsel in at least six other retiree medical insurance cases. (Id. ¶ 3.) Two of those cases settled with a retiree VEBA. (Id. ¶ 3.) Nickelhoff and other members of Sachs Waldman serve as legal counsel to multiple VEBAs established in litigation settlements to provide medical benefits to retirees and beneficiaries. (Id. ¶ 5.)

Class Counsel's familiarity with the case also supports its entitlement to deference. Nickelhoff filed the instant class action, began settlement discussions with DTNA, and participated in negotiations with DTNA and the UAW leading to the Settlement Agreement. (Nickelhoff Decl. ¶ 6.) He and other members of Class Counsel examined the CBAs between DTNA and the UAW, as well as plan documents and descriptions. (Id. ¶ 7.) Nickelhoff reviewed an actuarial analysis of the VEBA's projected ability to provide long-term retiree benefits using settlement funds and considered that analysis with its author. (Id. ¶ 7.)

Class Counsel recommends approval of the Settlement. (Nickelhoff Decl. ¶ 8; Settlement § 3, ECF No. 40-2.) Given its experience in other cases and its intimate knowledge of the

8

legal and factual issues in this case, Class Counsel's recommendation is entitled to great deference. The Class Representatives have signed the Settlement Agreement. (ECF No. 40-2 at 26-29.) Given the endorsements by Class Counsel and the Class Representatives, this factor weighs in favor of approving the Settlement.

**F. The Reaction of Absent Class Members**

The absent Class Members have received adequate notice and do not disapprove of the Settlement. On October 22, 2014, Class Action Administration, Inc. ("CAA") disseminated 801 Class Notices by first-class mail. (CAA Decl. ¶ 3, ECF No. 50-3.) After the United States Postal Service returned 73 Notices, CAA updated its address information and re-mailed those Notices. (Id. ¶ 4.) Notice is adequate, and has resulted in actual notice to most Class Members.

The absent Class Members' activity following the Notice dissemination confirms the Notice's adequacy. Several absent Class Members contacted Class Representative Allen Penley and Class Counsel to inquire about the Settlement. (Letter Decl. ¶ 2, ECF No. 49-1.) Class Counsel drafted and mailed a letter to the Class to clarify the Settlement terms. (Id. § 4.) Class Counsel subsequently received the telephone calls requesting clarification of that letter. (Id.)

9

No one has objected to the Settlement. That absence strongly indicates the Settlement's adequacy, especially given the Class size, the vital importance of healthcare benefits, and the number of inquiries about the Settlement. Cf. In re Se. Milk Antitrust Litig., 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013) (holding that, if only a small number of objections are received from a large class, that fact can be viewed as indicative of the adequacy of the settlement); In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 478 (S.D.N.Y. 1998) (same); In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 527 (E.D. Mich. 2003) (same).

This factor weighs heavily in favor of approving the Settlement.

**G. The Public Interest**

The law favors the settlement of class action litigation. See UAW v. Gen. Motors, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions").

The resolution of this litigation will, among other things, (i) provide healthcare benefits to retirees, (ii) increase the certainty of those benefits without more delay, and (iii) obviate the need for years of litigation, all of which are consistent with the public interest. Accord Sheick v. Auto. Component Carrier LLC, 2010 WL 4136958, at *21 (E.D. Mich. Oct. 18, 2010). The Settlement simultaneously benefits the parties

10

and serves the public interest by providing more certain healthcare benefits and resolving this federal court dispute with the maximum expediency and efficiency. Id. at *21; In re Cardizem, 218 F.R.D. 508 at 520 ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources").

Because the Settlement provides healthcare benefits for retirees and increases the certainty of those benefits without further delay, this factor weighs in favor of approving the Settlement.

### H. Named Plaintiffs' Relief Compared to Unnamed Class Members'

Because the Settlement provides the same relief for Class Members who are not named, this factor weighs in favor of approval of the Settlement.

For the foregoing reasons, the Settlement warrants final approval.

### I. Independent Member Appointment

The parties seek the appointment of four Independent Committee Members pursuant to Section 4(C) of the Settlement Agreement. They are Suzanne Daniels, PhD., Jack Martin, Francine Parker, and Gary Petroni (collectively the "Proposed Committee Members").

11

Under the Settlement Agreement, Independent Members must be able to

> discharge [the Committee's] duties in the interests of Participants and for the exclusive purpose of providing benefits to such Participants and defraying reasonable expenses of administering the Trust and the Plan and . . . act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, consistent with the provisions of ERISA and the Code.

(Settlement § 10.11; see also id. §§ 1.10, 9.1.)

The Proposed Committee Members are qualified to serve as Independent Members. Suzanne Daniels is the Interim Fiduciary of the UAW Retirees of Daimler Trucks North America Welfare Benefit Trust. (Biographies at 1, ECF No. 51-1.) She also serves as Committee member and Chairman of the Committees of multiple UAW retiree VEBAs. (Id.) Jack Martin has served as Chief Financial Officer of the U.S. Department of Education and has significant experience in the healthcare industry. (Id.) Francine Parker has been the Executive Director of the UAW Retiree Medical Benefits Trust since its establishment six years ago. (Id. at 2.) She also has over 40-years experience in the healthcare industry and has served as President and CEO of Health Alliance Plan, a major health maintenance organization in Michigan. (Id.) Gary Petroni is the Director of the Center for Population Health at the Southeastern Michigan Health

Association.  (Id.)  He has served as liaison and consultant to the Michigan Department of Community Health for Community Health Assessment and Improvement programs, the Uninsured Task Force, and the Statewide Health Facility Survey.  (Id.)

Given their relevant experience, the Proposed Committee Members are qualified to serve as Independent Members pursuant to the Settlement Agreement.

### III. Conclusion

For the foregoing reasons, the Motion is GRANTED.  The Court FINDS and ORDERS that:

1. The following Class, provisionally certified on October 8, 2014, is CERTIFIED for final settlement:

    (a) all UAW-Represented DTNA Employees who, prior to May 17, 2014, had retired from DTNA or any predecessors with eligibility for retiree medical benefits under the terms of the Prior Daimler Trucks-UAW Plan, and their spouses, surviving spouses, and other eligible beneficiaries who met the eligibility requirements under the terms of the Prior Daimler Trucks-UAW Plan; and

    (b) the surviving spouses and other eligible beneficiaries of any UAW-Represented DTNA Employee who died prior to May 17, 2014, and prior to retirement, if the surviving spouse or eligible beneficiary was eligible for retiree medical benefits as a surviving spouse or beneficiary of the deceased UAW-Represented DTNA Employee under the terms of the Prior Daimler Trucks-UAW Plan at the time of the UAW-Represented DTNA Employee's death.
    "UAW-Represented DTNA Employee" is an individual who is or was represented by UAW in their employment with DTNA at DTNA's facilities in Cleveland, Gastonia, Mt. Holly and High Point, NC;

        Memphis, TN; and Atlanta, GA.

        "Prior Daimler Trucks-UAW Plan" means all agreements and benefit plans and programs collectively bargained between DTNA (including applicable predecessors or successors) and UAW or UAW Local Unions which currently provide or provided Retiree Medical Benefits to: current or former UAW-represented employees who retired from employment at DTNA's facilities in Cleveland, Gastonia, Mt. Holly and High Point, NC; Memphis, TN; and Atlanta, GA (for avoidance of doubt, excluding current or former UAW-represented employees of Detroit Diesel Company), and the surviving spouses and beneficiaries of such employees who died prior to retirement.

2. The Settlement Agreement is fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). The Settlement Agreement is incorporated into this Order and finally approved in its entirety.

3. The New Plan and the New VEBA shall be administered by the Interim Fiduciary and the VEBA Committee in accordance with the form of Trust Agreement attached to the Settlement Agreement as Exhibit A. As provided in section 4(C) of the Settlement Agreement, the Interim Fiduciary of the New VEBA is Suzanne Daniels. As further provided in section 4(C) of the Settlement Agreement, the Committee shall consist of seven members, three of whom shall be appointed by the UAW International Union, and four of whom shall be Independent Members. The initial Independent Members of the VEBA Committee shall be Suzanne Daniels, PhD., Jack Martin,

    Francine Parker, and Gary Petroni.

4. The form of the Trust Agreement, ECF No. 51-2, is APPROVED.

5. All payments to the VEBA that DTNA made, or caused to be made, under the Settlement Agreement are payments in compromise and settlement of claims pursuant to § 302(c)(2) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(2).

6. DTNA shall pay the following litigation and settlement costs, which the Court finds are made in compromise and settlement of claims pursuant to 302(c)(2) of the Labor Management Relations Act of 1947, as amended, 20 U.S.C. § 186(c)(2), made in compromise, settlement, and release of claims:

   (a) Class Counsel's reasonable fees and costs as provided for in section 14(A) of the Settlement Agreement. Class Counsel's motion for attorney and professional fees and expenses may be filed within fourteen (14) days of this Order, pursuant to section 14(A) of the Settlement Agreement.

   (b) Reimbursement to the UAW for reasonable fees paid to retained legal counsel and reasonable consultant and expert fees incurred by the UAW, pursuant to section 14(B) of the Settlement Agreement.

7. The Settlement Agreement is binding on the Parties and all Class Members.

8. Plaintiffs' and the Class's claims against Defendants, and this case, are DISMISSED WITH PREJUDICE.

15

9.  The Court retains exclusive jurisdiction to resolve any disputes relating to, arising out of, or in connection with the Settlement Agreement's enforcement, interpretation, or implementation, pursuant to § 22(B) of the Settlement Agreement.

So ordered this 29th day of December, 2014.

/s Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE